**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

**MICHAEL RODRIGUEZ,**

**Petitioner,**

- against -

**ROBERT ERCOLE, Superintendent,**
**Greenhaven Correctional Facility,**

**Respondent.**

-------------------------------------------------------X

**OPINION AND ORDER**

**07 Civ. 415 (SAS) (MHD)**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/7/10
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    BACKGROUND

Petitioner Michael Rodriguez ("petitioner" or "Rodriguez"),

represented by counsel, brings this habeas corpus petition pursuant to 28 U.S.C. §

2254 ("section 2254") to challenge his state-court conviction for assault in the first

degree, for which he was sentenced to ten years imprisonment.[1]  Under Bronx

County Indictment 5174/02, petitioner was charged with one count of attempted

murder in the second degree, two counts of assault in the first degree, two counts

of assault in the second degree, and one count of criminal possession of a weapon

---

[1]       *See* N.Y. Penal Law § 120.10.

in the fourth degree.[2]   After a trial by jury, the jury convicted petitioner of one count of assault in the first degree and acquitted him on all other counts.

Rodriguez appealed his conviction to the Appellate Division, First Department, raising two claims. *First*, he argued that he was deprived of a fair trial because the jury had been given the wrong justification charge. The justification charge given to the jury was the standard defense-against-deadly-physical-force charge found in New York Penal Law § 35.15(2)(a).[3]  According to

---

[2]    In sum, the charges arose from an altercation between Rodriguez and Robert Rivera outside of a convenience store in the Bronx. According to Rodriguez, he was in a phone booth when Rivera, whom Rodriguez had known for two years and previously sold drugs to, crept up behind him and asked him for drugs. *See* R&R at 10. When Rodriguez informed Rivera that he did not have any drugs, Rivera pulled a knife and demanded money. *See id.* The two then "tussled" for a brief period, after which time Rivera fled, got into a car, and departed from the scene. *See id.* at 10-11. According to Rivera, he was walking back to his car from the store when Rodriguez, for no apparent reason, stabbed him twice in the back. *See id.* at 6. Attempting to flee, Rivera fell into the side of a parked van, at which point Rodriquez stabbed him two more times. *See id.* Rivera eventually fled and got into a car driven by his former girlfriend, who drove him to Lincoln Hospital. *See id.* It is undisputed that Rivera suffered four stab wounds, although there is some confusion in the record as to the precise location of those wounds. *See id.* at 9 & n.9.

[3]    Section 35.15(2)(a) states the following:

> 2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

2

Rodriguez, the charge given improperly imposed a duty to retreat and a

requirement that petitioner only use deadly physical force in response to a threat of

deadly physical force against him.  Rodriguez argued that the court should have

instead charged the jury under New York Penal Law § 35.15(2)(b), the defense-

against-robbery charge.[4]  Under section 35.15(2)(b), a robbery victim has no duty

to retreat and may respond with deadly physical force to defend against a robbery,

even if the robber does not threaten his victim with deadly physical force.[5]

*Second*, Rodriguez argued that his attorney's failure to: (1) request a section

35.15(2)(b) charge; and (2) object to the charge given to the jury, constituted

ineffective assistance of counsel under both state and federal standards.  The

---

> (a) The actor reasonably believes that such other person is
> using or about to use deadly physical force.  Even in such
> case, however, the actor may not use deadly physical force
> if he or she knows that with complete personal safety, to
> oneself and others he or she may avoid the necessity of so
> doing by retreating[.]

N.Y. Penal Law § 35.15(2)(a) ("section 35.15(2)(a)").

[4]      Section 35.15(2)(b) provides that an actor is under no duty to retreat
if: "(b) He or she reasonably believes that such other person is committing or
attempting to commit a kidnapping, forcible rape, forcible criminal sexual act or
robbery[.]"  N.Y. Penal Law § 35.15(2)(b) ("section 35.15(2)(b)").

[5]      *See* Memorandum of Law in Support of Michael Rodriguez's Petition
for a Writ of Habeas Corpus ("Habeas Mem.") at 21.

3

Appellate Division affirmed petitioner's conviction, stating as follows:

> Defendant's challenge to the court's justification charge is unpreserved and we decline to review it in the interest of justice. Were we to review this claim, we would find that although, under the facts presented, defendant was entitled to a charge on use of force in defense against a robbery (*see* Penal Law § 35.15[2][b] ), the absence of such charge did not prejudice defendant "[b]ecause there was overwhelming evidence disproving the justification defense and no reasonable possibility that the verdict would have been different had the charge been correctly given" (*People v. Petty*, 7 N.Y.3d 277, 285 [2006] ). For the same reason, counsel's failure to request a charge on defense against a robbery did not constitute ineffective assistance under the state and federal standards (*see People v. Benevento*, 91 N.Y.2d 708, 713-714 [1998]; *see also Strickland v. Washington*, 466 U.S. 668 [1984]).[6]

Rodriguez then filed this timely habeas petition, arguing that his trial attorney's refusal to request a defense-against-robbery charge and object to the charge given, which included a duty to retreat and a requirement that deadly force be used only against threatened deadly force, denied him his right to effective representation ensured by the Sixth Amendment to the United States Constitution.[7] I referred the petition to Magistrate Judge Michael H. Dolinger for a Report and

---

[6]     *People v. Rodriguez*, 821 N.Y.S.2d 755, 756 (1st Dep't 2006) (parallel citations omitted).

[7]     *See* Habeas Mem. at 17-23.

Recommendation ("R&R").[8]  In his thorough R&R, dated August 15, 2008, Judge

Dolinger recommends that I deny Rodriguez's habeas petition.[9]  Petitioner

objected to Judge Dolinger's recommendation and his conclusion regarding

petitioner's ineffective assistance of counsel claim.[10]   Despite a request from this

Court asking respondent to respond to the Objections in full, respondent submitted

a one-page letter summarily opposing petitioner's Objections.[11]  Nonetheless, for

the following reasons, I hereby accept Judge Dolinger's recommendation, adopt

the R&R, and deny Rodriguez's habeas petition.

## II.    STANDARDS

### A.    Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court

may grant a writ of habeas corpus to a state prisoner only if the state court's

---

[8]     For an exhaustive recitation of the facts, see generally R&R at 3-23.

[9]     See id. at 3, 35.

[10]    See Objections to Magistrate's Report, annexing the 10/6/08 Letter
from Robert S. Dean, petitioner's habeas counsel (the "Objections").

[11]    See 4/21/09 Letter from Assistant District Attorney Rither Alabre (the
"Opposition") ("Respondent disagrees with petitioner's objections to the Report
and Recommendation and relies on the arguments made in respondent's response
to the petition (including all the exhibits attached therewith) and the factual
findings and legal determinations made by Magistrate Judge Dolinger.").

adjudication of a particular claim, on the merits in a state court proceeding,

resulted in a decision that:  (1) "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) . . . was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding."[12]

With respect to subsection 2254(d)(1), the Supreme Court has

explained that a state-court decision is "contrary to" clearly established federal law

in the following instances:

> First, a state-court decision is contrary to this Court's
> precedent if the state court arrives at a conclusion opposite
> to that reached by this Court on a question of law.  Second,
> a state-court decision is also contrary to this Court's
> precedent if the state court confronts facts that are
> materially indistinguishable from a relevant Supreme Court
> precedent and arrives at a result opposite to ours.[13]

With regard to the "unreasonable application" prong, the Supreme Court has

stated:

> [A] state-court decision can involve an "unreasonable
> application" of this Court's clearly established precedent in
> two ways.   First, a state-court decision involves an
> unreasonable application of this Court's precedent if the

---

[12]    28 U.S.C. § 2254(d).  *Accord Berghuis v. Thompkins*, No. 08-1470,
___ S. Ct. ___, 2010 WL 2160784, at *7 (June 1, 2010) (citing *Knowles v.
Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1411, 1412 (2009)).

[13]    *Williams v. Taylor*,  529 U.S. 362, 405 (2000).

state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[14]

Thus, in order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous: "[t]he state court's application of clearly established law must be *objectively unreasonable*."[15]  This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[16]  While the test  requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial

---

[14]      *Id.* at 407.

[15]      *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 130 S. Ct. 1855, (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007));  *Williams*, 529 U.S. at 409;  *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[16]      *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

incompetence.'"[17]

       With respect to subsection 2254(d)(2), the Supreme Court has observed that although the term "unreasonable" is difficult to define, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[18] Moreover, under section 2254(e)(1), a determination of a factual issue by a State court "shall be presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."[19] In *Wood v. Allen*, the Supreme Court granted certiorari to resolve, *inter alia*, the question of "whether, in order to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence."[20] Unfortunately, the Supreme Court did not reach the issue of "whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)"

---

[17]    *Jones*, 229 F.3d at 119 (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quotation marks and citations omitted)).

[18]    *Wood v. Allen*, ___ U.S. ___, 130 S. Ct. 841, 849 (2010).

[19]    28 U.S.C. § 2254(e)(1).

[20]    *Wood*, 130 S. Ct. at 848.

because the "reasonableness of the state court's factual determination . . . [did] not

turn on any interpretive difference regarding the relationship between these

provisions."[21]

## B.   Justification Charge Under New York Law

Under Article 35 of the New York Penal Law, justification is a

defense, not an affirmative defense.[22]   Accordingly, the People bear the burden of

disproving the defense beyond a reasonable doubt once it is raised on a proper

evidentiary foundation.[23]   Furthermore, in determining whether a justification

charge is warranted, the trial court *must* assess the evidence in the light most

favorable to the defendant, drawing all reasonable inferences in his favor.[24]

---

[21]     *Id.* at 849 ("We conclude that, under § 2254(d)(2), the state court's
finding that Wood's counsel made a strategic decision not to pursue or present
evidence of Wood's mental deficiencies was not an unreasonable determination of
the facts in light of the evidence presented in the state-court proceedings.  We
therefore do not need to decide whether that determination should be reviewed
under the arguably more deferential standard set out in § 2254(e)(1).").

[22]     *See* N.Y. Penal Law § 35.00.

[23]     *See id.* § 25.00(1).

[24]     *See Davis v. Strack*, 270 F.3d 111, 124-25 (2d Cir. 2001) (citing New
York Court of Appeals cases); *Blazic v. Henderson*, 900 F.2d 534, 540 (2d Cir.
1990) (same).
          "An inference is not a suspicion or a guess. It is a reasoned, logical
decision to conclude that a disputed fact exists on the basis of another fact [that is
known to exist]." 1 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions,
Criminal* ¶ 6.01, Instr. 6-1 (2009).

9

The defense of justification affirmatively permits the use of force under certain specified circumstances. A person may "use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person[.]"[25]   A person may not use *deadly* physical force upon another person unless the actor reasonably believes that such other person is using or about to use deadly physical force.[26]  The duty to retreat found in section 35.15(2)(a) does not attach when the actor "reasonably believes that such other person is committing or attempting to commit a . . . robbery[.]"[27]

With regard to the charge of justification, the Second Circuit has

held:

> A justification charge is warranted, if on any reasonable view of the evidence, the fact finder *might have* decided that defendant's actions were justified.  The New York Court of Appeals has rejected a restrictive application of the defense.  In determining whether the evidence warrants a justification charge, the reviewing court *must* view the

---

[25]   N.Y. Penal L. § 35.15(1).

[26]   *Id.* § 35.15(2)(a).

[27]   *Id.* § 35.15(2)(b).

record in the light most favorable to the defendant.[28]

Furthermore, "[w]here a justification charge is warranted, a court's refusal to instruct the jury that the People must disprove the defendant's claim of justification constitutes reversible error."[29] Finally, a justification charge may be warranted even where a defendant argues that the act upon which the defense is based was not intentional[30] or where aspects of a defendant's testimony is inconsistent with a justification defense.[31]

### C.    Ineffective Assistance of Counsel Under *Strickland v. Washington*

To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner "must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[32] "[T]he burden rests on the

---

[28]    *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005) (quotation marks and citations omitted; emphasis added).

[29]    *Davis*, 270 F.3d at 125.

[30]    *See People v. Khan*, 68 N.Y.2d 921, 922 (1986).

[31]    *See Davis*, 270 F.3d at 125.

[32]    *Wilson v. Mazzuca*, 570 F.3d 490, 501 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1994)). *Accord Smith v. Spisak*, 130 S. Ct. 676, 685 (2010).

accused to demonstrate a constitutional violation."[33]

"To satisfy the first prong – the performance prong – the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"[34]  The inquiry under the performance prong is "contextual" and "asks whether defense counsel's actions were objectively reasonable considering all the circumstances."[35] "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"[36]

In determining what constitutes objective reasonableness, courts look for guidance to "'[p]revailing norms of practice as reflected in American Bar Association standards.'"[37]  Attorney errors that fall below an objective standard of reasonableness "include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight,

---

[33]    *United States v. Cronic*, 466 U.S. 648, 658 (1984).

[34]    *Wilson*, 570 F.3d at 502 (quoting *Strickland*, 466 U.S. at 687).

[35]    *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 688).

[36]    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).

[37]    *Purdy*, 208 F.3d at 44 (quoting *Strickland*, 466 U.S. at 688).

carelessness, ineptitude, or laziness."[38] "'Judicial scrutiny of counsel's

performance must be highly deferential,' and 'a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.'"[39] "The proper measure of attorney performance remains

simply reasonableness under prevailing professional norms."[40]

　　　　　To satisfy the second prong – the prejudice prong – a "defendant must

show that there is a *reasonable probability* that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome."[41]

"To determine whether prejudice exists in [a] case, [courts] review the record to

determine the relative role that the alleged trial errors played in the total context of

---

[38]　　　*Wilson*, 570 F.3d at 502 (quotation marks omitted). The Second
Circuit has held that "counsel's failure to object to a jury instruction (or to request
an additional instruction) constitutes unreasonably deficient performance only
when the trial court's instruction contained 'clear and previously identified errors.'
Conversely, when a trial court's instruction is legally correct as given, the failure
to request an additional instruction does not constitute deficient performance."
*Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quoting *Bloomer v. United
States*, 162 F.3d 187, 193 (2d Cir. 1998)).

[39]　　　*Knowles*, 129 S. Ct. at 1420 (quoting *Strickland*, 466 U.S. at 689).

[40]　　　*Id.* (quoting *Strickland*, 466 U.S. at 688).

[41]　　　*Strickland*, 466 U.S. at 694 (emphasis added).

th[e] trial."[42]   In other words, the "question is whether there is a reasonable

probability that, absent the errors, the fact finder would have had a reasonable

doubt respecting guilt."[43]   Finally, a finding of lack of prejudice may precede, or

preempt, the quality of representation inquiry.   The Supreme Court has stated:

> Although we have discussed the performance component
> of an ineffectiveness claim prior to the prejudice
> component, there is no reason for a court deciding an
> ineffective assistance claim to approach the inquiry in the
> same order or even to address both components of the
> inquiry if the defendant makes an insufficient showing on
> one.   In particular, a court need not determine whether
> counsel's performance was deficient before examining the
> prejudice suffered by the defendant as a result of the
> alleged deficiencies.   The object of an ineffectiveness
> claim is not to grade counsel's performance.   If it is easier
> to dispose of an ineffectiveness claim on the ground of lack
> of sufficient prejudice, which we expect will often be so,
> that course should be followed.   Courts should strive to
> ensure that ineffectiveness claims not become so
> burdensome to defense counsel that the entire criminal
> justice system suffers as a result.[44]

---

[42]   *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).   *Accord Berghuis*, 2010 WL 2160784, at *14 ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695).

[43]   *Strickland*, 466 U.S. at 695.

[44]   *Id.* at 697.

## III.    DISCUSSION

I have reviewed, in detail, the R&R, petitioner's Objections, and

respondent's Opposition.  Moreover, I have reviewed the instant habeas petition

*de novo*.  Based on a full review of the record, I agree with the recommendation by

Judge Dolinger to deny petitioner's Sixth Amendment ineffective assistance claim

on the basis of lack of prejudice.

### A.    Judge Dolinger's Analysis

Judge Dolinger found a lack of prejudice resulting from the trial

court's decision to give the justification charge based on defense-against-deadly-

physical-force rather than the justification charge based on defense-against-

robbery.[45]  In finding a lack of prejudice, Judge Dolinger compared the common

elements of the two justification charges, as follows:

> The two versions of the justification defense contain
> common elements that petitioner failed to meet. First, both
> defenses require the jury to determine whether the
> defendant *used force on the basis of an objectively*
> *reasonable belief that the other person posed a threat*,
> though the nature of the required threat differs under the
> two defenses. . . .    Second, the jury must determine
> *whether the defendant reasonably believed that the force*
> *he used was necessary at the time* . . .  In other words, the

---

[45]      *See* R&R at 31 ("Based on the trial evidence, it is highly unlikely that
a reasonable jury would have found that Rodriguez met the 'reasonable belief'
threat requirement under either version of the justification defense.").

force used must not be excessive under the circumstances.[46]

Judge Dolinger found that the force used by Rodriguez against Rivera was

excessive, whether or not Rivera was attempting to rob Rodriguez.

> Once petitioner gained control of the knife, his use of
> deadly force against Rivera, even if originally justified,
> ceased to be based on a reasonable apprehension that he
> was faced with either the use of deadly physical force or a
> robbery at the hands of Rivera, or that deadly force on his
> part was necessary.[47]

The excessive nature of the force used by Rodriguez against Rivera would have

defeated either version of the justification charge, thereby resulting in a lack of

prejudice flowing from the failure to give the defense-against-robbery charge.[48]

For this reason, Judge Dolinger found that the Appellate Division did not

unreasonably apply the *Strickland* standard in denying petitioner's ineffective

assistance of counsel claim.[49]

---

[46]    *Id.* at 30 (emphasis added).

[47]    *Id.* at 32.

[48]    *See id.* at 33 ("Given the state of the record, it is highly unlikely that
the jury, even if told to apply the more flexible version of the justification charge,
would have acquitted Rodriguez. Accordingly, he has not shown that he was
prejudiced by counsel's failure to argue for a robbery-defense charge.").

[49]    *See id.* at 35 ("Rodriguez has failed to demonstrate that his counsel's
failure to request a defense-against-robbery justification charge was prejudicial.
Necessarily, then, the Appellate Division did not apply *Strickland* incorrectly,
much less unreasonably. Additionally, because the evidence strongly supports the

16

## B.    Petitioner's Objections

Petitioner argues that there are two independent, major flaws in Judge

Dolinger's legal analysis. *First*, petitioner argues that Judge Dolinger did not give

deference to the Appellate Division's conclusion that the trial record warranted a

defense-against-robbery instruction.[50]  According to petitioner, if there was a

reasonable view of the evidence by the Appellate Division, viewed in the light

most favorable to the defendant, supporting the defense-against-robbery

justification charge then, *ipso facto*, there must have been a reasonable view of the

evidence supporting an acquittal based on that defense.  Arguably, then, Judge

Dolinger did not defer to the Appellate Division's conclusion when he decided

"that there was no prejudice because the trial facts did not support the defense-

against-robbery defense."[51]

The problem with petitioner's first argument is that it is tautological

in that it assumes that whenever a particular justification charge is warranted, there

must be a reasonable probability of an acquittal had that charge been given.

_____

Appellate Division's finding of a lack of prejudice, that court did not rest its
decision on an "unreasonable determination" of the facts.  Accordingly, there is no
basis for habeas relief in these circumstances.")  (citing 28 U.S.C. § 2254(d)).

[50]    *See* Objections at 4.

[51]    *Id.*

Under petitioner's logic, there can never be an analysis of prejudice under the

second *Strickland* prong whenever a justification charge was warranted but not

given. Petitioner overlooks the fact that a justification charge is a defense which

may, or may not, result in an acquittal. The fact that a justification charge may be

warranted in a particular case does not necessarily indicate a lack of sufficient

evidence to defeat that defense. For example, as explained by the New York

Court of Appeals,

> consistent with most justification provisions, Penal Law §
> 35.15 permits the use of deadly physical force only where
> requirements as to triggering conditions and the necessity
> of a particular response are met. As to the triggering
> conditions, the statute requires that the actor "reasonably
> believes" that another person either is using or about to use
> deadly physical force or is committing or attempting to
> commit one of certain enumerated felonies, including
> robbery. As to the need for the use of deadly physical
> force as a response, the statute requires that the actor
> "reasonably believes" that such force is necessary to avert
> the perceived threat.[52]

---

[52]    *People v. Goetz*, 68 N.Y.2d 96, 106 (1986) (citation omitted). The
New York Court of Appeals appended the following footnote to the above
excerpt:

> While the portion of section 35.15 (2) (b) pertaining to the
> use of deadly physical force to avert a felony such as
> robbery does not contain a separate "retreat" requirement,
> it is clear from reading subdivisions (1) and (2) of section
> 35.15 together, as the statute requires, that the general
> "necessity" requirement in subdivision (1) applies to all
> uses of force under section 35.15, including the use of

The reasonableness language found in *People v. Goetz* has been interpreted as follows:

> The New York Court of Appeals:
>
> explained [in *People v. Goetz* ] that the justification statute imposes a two-part test which involves both subjective and objective components. When a defendant claims the use of force was justified, the fact finder must *first determine if defendant believed physical force* (or deadly physical force) *was necessary to defend against the imminent use of physical force* (or deadly physical force). That is the *subjective component.* If the People fail to disprove defendant believed physical force was necessary, the fact finder must next consider *whether defendant's belief was reasonable, that is, whether a reasonable person would have held that belief under the circumstances which existed.* It is not enough that the defendant believed that the use of force was necessary under the circumstances; his reactions must be those of a reasonable person similarly confronted. That is the *objective component.*[53]

Thus, although a particular justification charge may be warranted in a particular case, it does not necessarily follow that the jury will determine that the defendant's actions were justified. Furthermore, if there is a reasonable probability that the jury would not have determined that the defendant's actions were justified –

---

deadly physical force under subdivision (2) (b). *Id.* n.5.

[53]    *Cromwell v. Keane*, No. 98 Civ. 13, 2002 WL 929536, at *28 (S.D.N.Y. May 8, 2002) (emphasis altered in part).

assuming the appropriate charge had been given – then the defendant's subsequent habeas petition based on ineffective assistance of counsel for failing to request that charge must necessarily fail.

Here, the excessiveness of the force exerted by Rodriguez defeats any claim of self-defense, whether to fend off a robbery or otherwise. Although Rodriguez claims that Rivera initially threatened him with a knife, Rodriguez came out of the "tussle" unscathed while Rivera suffered four knife wounds, one of which was life threatening. The fact that Rodriguez's attorney did not ask for the more lenient defense-against-robbery charge is irrelevant given Rodriguez's excessive response to the alleged threat posed by Rivera. Accordingly, Judge Dolinger's finding of an absence of prejudice on habeas review is eminently reasonable and petitioner's first Objection is dismissed.

Rodriguez goes on to raise a second Objection.

> The second major analytical flaw [in the R&R] is that, under New York law, it is not required that the defendant establish any element of a justification defense in order for the jury to acquit. Instead, under New York jurisprudence, judges are required to instruct juries that the burden is on the People to disprove a justification defense beyond a reasonable doubt.[54]

---

[54]     Objections at 4.

Petitioner points out that "nowhere in the [M]agistrate's 'Prejudice' discussion at

R&R 29-34 is there any acknowledgment of the People's burden to disprove the

defense beyond a reasonable doubt."[55]  But petitioner ignores the fact that Judge

Dolinger analyzed the charge given to the jury in finding that the "set of

instructions accurately placed the burden of proof on the State and summarized the

elements of the defense, including the limitation that deadly physical force not be

used unless necessary to respond to deadly physical force . . . ."[56]  The charge

given to the jury included the following language:

> In order for the People to prove that the defendant's
> conduct was not justified, in other words, that he was not
> legally allowed to use deadly physical force against Mr.
> Rivera, the People must prove beyond a reasonable doubt
> any of the following five factors:
>
> First, the initial aggressor; second, the defendant's
> subjective belief; third, the defendant's objective belief;
> four, the ability or the knowledge of the ability to retreat;
> five, the use of excessive force.
>
> * * *
>
> Even if the defendant was justified in using deadly physical
> force at the beginning of the incident on October 3, 2002,
> you must decide if the People have proven beyond a
> reasonable doubt that the defendant's right to use deadly

---

[55]   *Id.*

[56]   R&R at 16-17.

> physical force ended at some point during the incident because there was no longer a threat to him of deadly physical force or he could no longer believe either subjectively or objectively that there was such threat or actual physical force against him.
>
> If he used deadly physical force after Mr[.] Rivera was no longer a threat to him, then the defendant was not acting in self-defense. The defendant was not permitted to continue to use deadly physical force against Mr. Rivera if the threat that was first posed by Mr. Rivera no longer existed.[57]

Thus, Judge Dolinger was aware that the burden was on the People to disprove the justification defense. The fact that Judge Dolinger did not reiterate the People's burden in his discussion of prejudice does not indicate that he did not consider it in concluding that petitioner failed to show prejudice. Petitioner's second and last Objection is therefore also dismissed.

## IV. CONCLUSION

For the reasons set forth above, I hereby adopt the R&R and deny Rodriguez's section 2254 petition. The next question is whether this Court should issue a Certificate of Appealability ("COA"). For a COA to issue, petitioner must make a "substantial showing of the denial of a constitutional right."[58] A "substantial showing" does not require a petitioner to demonstrate that he would

---

[57]    *Id.* at 17, 19 (quoting Trial Transcript at 77-87).

[58]    28 U.S.C. § 2253(c)(2).

22

prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[59]  The issues raised in petitioner's Objections were not easily decided and it is possible that a different judge would have reached a different conclusion.  Accordingly, I hereby grant a certificate of appealability as to whether petitioner's trial counsel was ineffective for: (1) not requesting a defense-against-robbery  charge; and (2) not objecting to the justification charge given by the trial judge.   The Clerk of the Court is directed to close this motion and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 7, 2010

---

[59]      *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

23

## - Appearances -

**For Petitioner:**

Robert S. Dean, Esq.
Center for Appellate Litigation
74 Trinity Place, 11th Floor
New York, NY 10006
(212) 577-2535

**For Respondent:**

Rither Alabre
Assistant District Attorney
Office of the District Attorney, Bronx County
198 East 161st Street
Bronx, NY 10451
(718) 838-7140